IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BETTY J., | ) |
| | ) |
|     Plaintiff, | ) |
| | )   No. 18 C 5457 |
| v. | ) |
| | )   Magistrate Judge Gabriel A. Fuentes |
| ANDREW M. SAUL, Commissioner | ) |
| of Social Security, [1] | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION AND ORDER[2]

Plaintiff, Betty J.,[3] applied for disability benefits on December 9, 2014, alleging disability beginning March 11, 2014, when she was 45 years old. (R. 292-99.) After the applications were denied initially and on reconsideration, the ALJ held a hearing on June 22, 2017, at which time Plaintiff amended her alleged onset date of disability to November 1, 2016. (R. 315.) On October 16, 2017, the ALJ issued a written opinion denying Plaintiff's applications, and on June 8, 2018,

---

[1] The Court substitutes Andrew M. Saul for his predecessor, Nancy A. Berryhill, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[2] On October 12, 2018, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to a United States Magistrate Judge for all proceedings, including entry of final judgment. (D.E. 9.) On May 31, 2019, this case was reassigned to this Court for all proceedings. (D.E. 29.)

[3] The Court in this opinion is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court. IOP 22 presumably is intended to protect the privacy of plaintiffs who bring matters in this Court seeking judicial review under the Social Security Act. The Court notes that suppressing the names of litigants is an extraordinary step ordinarily reserved for protecting the identities of children, sexual assault victims, and other particularly vulnerable parties. *Doe v. Vill. of Deerfield*, 819 F.3d 372, 377 (7th Cir. 2016). Allowing a litigant to proceed anonymously "runs contrary to the rights of the public to have open judicial proceedings and to know who is using court facilities and procedures funded by public taxes." *Id*. A party wishing to proceed anonymously "must demonstrate 'exceptional circumstances' that outweigh both the public policy in favor of identified parties and the prejudice to the opposing party that would result from anonymity." *Id*., citing *Doe v. Blue Cross & Blue Shield Unites of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997). Under IOP 22, both parties are absolved of making such a showing, and it is not clear whether any party could make that showing in this matter. In any event, the Court is abiding by IOP 22 subject to the Court's concerns as stated. The Court's understanding is that the claimants are not anonymous litigants, in that their names in all of these matters brought for judicial review under the Social Security Act are otherwise available upon a review of the public docket.

the Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. 1), making the ALJ's decision the final decision of the Commissioner. *Prater v. Saul*, 947 F.3d 479, 481 (7th Cir. 2020). Plaintiff now moves to remand the Commissioner's decision (D.E. 15), and the Commissioner has moved to affirm. (D.E. 34.)

**I.      Administrative Record**

Plaintiff had a history of migraine headaches, carpal tunnel syndrome ("CTS") and back pain preceding her amended alleged onset date. In 2014, Plaintiff complained to her primary care physician, Wanda Hatter-Stewart, M.D., that Topamax (for nerve pain) with Imitrex (a triptan, for headache pain) was not controlling her headaches. (R. 424.) Dr. Hatter-Stewart added prescriptions for Ibuprofen 800 mg and Flexeril (muscle relaxant) for headache and back pain, which Plaintiff rated at seven out of 10. (R. 426.) In November 2014, Plaintiff underwent a neurology consultation; in addition to headaches, she described bilateral hand numbness in the mornings which the neurologist opined was suggestive of carpal tunnel syndrome ("CTS"). (R. 447.) The neurologist prescribed wrist splints and increased Plaintiff's dose of amitriptyline (for nerve pain). (*Id.*)

On March 14, 2015, Plaintiff underwent an internal medicine consultative examination for the Bureau of Disability Determination Services. Examination showed Plaintiff had slightly decreased grip strength in both hands and a normal ability to grasp and manipulate objects. (R. 510.) A Phalen (wrist flexion) test was positive for CTS but Tinel's sign (tapping over nerve to elicit tingling sensation in fingers) was negative. (*Id.*) Plaintiff had reduced range of motion in her lumbar spine with complaints of pain. (R. 510.) On March 31, 2015, the non-examining state agency medical consultant opined Plaintiff could perform light work but limited to frequent fine and gross manipulation and no concentrated exposure to noise, vibration or hazards. (R. 168-69.)

2

This opinion was affirmed on reconsideration on September 1, 2015. (R. 194.) Plaintiff was still taking amitriptyline, Flexeril, Imitrex and Topamax in November 2015. (R. 806.)

At a visit to Dr. Hatter-Stewart on March 8, 2016, Plaintiff reported chest pain, abdominal pain, back pain and headache, and Dr. Hatter-Stewart noted Plaintiff had undergone "right carpal tunnel surgery." (R. 739-40.) On March 15, 2016, a CT scan of Plaintiff's abdomen and pelvis showed evidence of Paget's disease affecting the lumbar L5 vertebral body.[4] (R. 985.) Plaintiff worked part-time at a Wendy's restaurant for about six weeks in the fall of 2016, but she quit because back pain and leg spasms made it hard for her to stand and lift as required. (R. 127-28, 131, 384.)

On November 30, 2016, Plaintiff's first medical visit after her alleged onset date, she visited nurse Yvette Johnson for mental health counseling. At that visit, Ms. Johnson noted that Plaintiff's mental examination was normal, adding that Plaintiff was "doing well, affect is bright, mood is congruent." (R. 750-51.) Ms. Johnson prescribed Plaintiff Lexapro (for depression and generalized anxiety disorder) and Trazadone (a sedative and antidepressant). (*Id*.) On December 16, 2016, Ms. Johnson noted that Plaintiff was "doing well" on her current medication regimen, although she expressed anxiety over having migraines and chest pains. (R. 1093-95.) On March 7, 2017, Ms. Johnson noted that Plaintiff continued to do well despite being under "extreme stress" while helping her daughter deal with an abusive relationship. (R. 1082-85.) On March 17, 2017, Plaintiff was anxious and depressed and complained of mood swings, but her mental examination was normal. (R. 1078-81.) Ms. Johnson added a prescription for Trileptal.[5] (R. 1078.)

---

[4]Paget's disease of the bone causes bones to become enlarged, deformed and fragile because of excessive breakdown and deformation of bone. https://www.hopkinsmedicine.org/health/conditions-and-diseases/paget-disease-of-the-bone.

[5]Trileptal (oxcarbazepine) is an antiepileptic medication that may be prescribed "off-label for nerve pain or as a mood stabilizer for bipolar disorder," meaning that it has not been approved by the FDA for this use. https://www.nami.org/Learn-More/Treatment/Mental-Health-Medications/Types-of-Medication/Oxcarbazepine.

On February 16, 2017, Plaintiff told Dr. Hatter-Stewart that her headaches had increased in frequency, intensity and length. (R. 1086.) Plaintiff also reported abdominal and back pain, and she had decreased range of motion in her back. (R. 1086-89.) Dr. Hatter-Stewart added prescriptions for Tizanidine (muscle relaxant) and meloxicam (nonsteroidal anti-inflammatory drug). (R. 1090.) In March 2017, an MRI of Plaintiff's brain was essentially normal. (R. 1076.)

## II.     Evidentiary Hearing

On June 22, 2017, Plaintiff and a vocational expert ("VE") testified at a hearing before the ALJ. Plaintiff testified that she could not mop the floor due to back pain, but she cooked, barbecued, vacuumed, cleaned the mirrors, made the beds, did laundry and took care of her personal hygiene. (R. 147.) Plaintiff continued to have pain in her hand; she could lift a gallon of milk, but she could not pick up her grandkids. (R. 132.) She testified that on a typical day, she could stand and sit for about 15 minutes before needing to switch positions; she took muscle relaxers for her back pain but avoided epidural shots. (R. 131-32, 134.) Plaintiff reported having about three migraines per week lasting about two hours each; medication relieved her migraines "somewhat." (R. 133.) Plaintiff did not know what triggered her migraines but guessed that light and loud music did. (R. 134.) Regarding her mental health, Plaintiff testified that some days she was happy and some days she was sad; her mood switched with no warning. (R. 136.) She stated that she sometimes hallucinated and heard things. (R. 137.) Plaintiff did not take her mental health medications before the hearing, but she probably should have done so. (R. 150.)

The VE testified next, identifying Plaintiff's past work as a home health care attendant, which she performed at the medium to heavy level, and an assembler of small products, which she performed at the light physical demand level. (R. 153.) The ALJ asked the VE to describe jobs available for a hypothetical individual limited to light work with occasional pushing and pulling,

4

frequent handling and fingering, and avoiding concentrated exposure to environmental dangers. (R. 154.) The VE testified the individual could perform some of Plaintiff's past work as well as other jobs. (R. 155.) However, when the ALJ added "avoid concentrated exposure to bright fluorescent lights" to the hypothetical, the VE was not aware of available jobs because the Dictionary of Occupational Titles did not address this, and most indoor jobs had constant exposure to fluorescent light. (R. 156.) The VE testified that the addition of certain mental limitations to the hypothetical did not change the available jobs. (R. 157-58.)

**III.  ALJ's Decision**

On October 16, 2017, the ALJ issued an opinion finding Plaintiff was not under a disability within the meaning of the Social Security Act from November 1, 2016, her amended alleged onset date, through the date of the decision. At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity during this time. (R. 103.) At Step Two, the ALJ found Plaintiff had the severe impairments of migraine headaches, CTS, and disorder of the lumbar spine. (R. 104.) The ALJ found Plaintiff's alleged mental impairments were not severe because she had "minimal treatment of less than a year with normal mental examinations" and her stress stemmed from helping her daughter through an abusive relationship. (*Id*.) The ALJ did not believe Plaintiff's claim that she had a "history of depression and anxiety" that preceded her first mental health treatment in November 2016 because "her prior records did not show that she suffered or treated any of these impairments." (*Id*.) In addition, the ALJ did not believe Plaintiff's testimony that she had hallucinations and delusions because she did not tell her therapist she experienced those symptoms, and her mental examinations were normal in November and December 2016 and March 2017. (*Id*.) At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a Listing. (R. 104-05.)

The ALJ next determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand, walk and/or sit six hours in an eight-hour workday; occasionally climb ramps and stairs but never ladders, ropes or scaffolds; occasionally push and pull with her upper extremities bilaterally; frequently handle and finger bilaterally; and avoid concentrated exposure to loud noise, vibration, moving machinery and unprotected heights. (R. 105.)

The ALJ found Plaintiff's statements concerning the extent of her symptoms were "not entirely consistent" with the record. (R. 106-07.) The ALJ gave "great weight" to the state agency opinions, reasoning Plaintiff "only received minimal conservative treatment with barely any treatment since her amended onset date. She has only obtained medication refills and her physical and mental examinations have been normal. The claimant even admitted to working until 2016 and thus, is evidence that she is able to work." (R. 107.) The ALJ stated that if Plaintiff's "pain were more severe, she would have received additional treatment and a more aggressive treatment protocol would have been ordered." (R. 107-08.) The ALJ further noted Plaintiff "did work prior with back, headaches and [CTS] symptoms" and found "no evidence that her problems have exacerbated on her amended onset date to warrant a more restrictive" RFC. (R. 108.)

At Step Four, the ALJ found that Plaintiff could not perform her past work. (R. 108.) At Step Five, the ALJ determined that based on the VE's testimony, Plaintiff could perform other work that exists in significant numbers in the national economy, and thus that she was not disabled from her onset date through the date of the decision. (R. 109.)

## IV. Appeals Council Decision

On June 8, 2018, the Appeals Council declined to consider additional evidence submitted by Plaintiff. Some of this evidence preceded the ALJ's opinion: an August 2017 report from Ms.

6

Johnson noting Plaintiff's psychiatric and mental status examinations were normal and her mental health medications were "effective" (R. 54-55); an August 2017 report from Dr. Hatter-Stewart noting Plaintiff had pelvic/abdominal pain and her vertebral lesion might indicate Paget's disease (R. 28-29); an August 2017 X-ray of Plaintiff's lumbar spine; and an October 2017 MRI showing no change since March 2016 (R. 41, 47.) The Appeals Council found this evidence did "not show a reasonable probability that it would change the outcome of the decision." (R. 2.)

Plaintiff also submitted to the Appeals Council the following evidence that post-dated the ALJ's decision: an October 20, 2017 report from Ms. Johnson noting depressed mood and anxiety but no hallucinations or delusions, and adding a prescription for Xanax (a sedative) (R. 59); an October 24, 2017 total body bone scan showing an "abnormal intense increased uptake" in Plaintiff's thoracic and lumbar spine consistent with Paget's disease (R. 62); a November 17, 2017 visit to Maria Claudia Moscoso-Cordero, M.D., a specialist in endocrinology and metabolic diseases, noting Plaintiff complained of total body pain and was "fibromyalgia point positive" (R. 84-85, 89); and a December 15, 2017 order for a lumbar spine and femur (thigh) bone density scan (R. 86-87.) The Appeals Council found this evidence did "not relate to the period at issue." (R. 2.)

**V.      Analysis**

The Court's review of the ALJ's decision "is deferential; we will not reweigh the evidence or substitute our judgment for that of the ALJ." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). "The ALJ's decision will be upheld if supported by substantial evidence, which means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019) (internal citations and quotations omitted). "An ALJ need not address every piece of evidence," but must "build an accurate and logical bridge" between the evidence and his conclusion. *Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017).

7

Plaintiff challenges the ALJ's RFC and credibility determinations, as well as the Appeals Council's findings. We address each of these challenges below.

### A. Appeals Council

The Court first addresses Plaintiff's argument that the Appeals Council erred in declining to consider the additional evidence she submitted. (D.E. 22: Pl.'s Mem. at 14-15.)

#### 1. Jurisdiction

The Commissioner argues the Appeals Council's decision is "discretionary and unreviewable." (D.E. 35: Gov.'s Mem. at 14.) However, the Council's decision is "discretionary and unreviewable" only "if the Appeals Council deemed the evidence new, material, and time-relevant but denied plenary review of the ALJ's decision based on its conclusion that the record—as supplemented—does not demonstrate that the ALJ's decision was contrary to the weight of the evidence." *Stepp v. Colvin*, 795 F.3d 711, 722 (7th Cir. 2015) (internal quotations and citations omitted). Where "the Council determined [the] newly submitted evidence was, for whatever reason, not new and material, and therefore deemed the evidence non-qualifying under the regulation, [the court] retain[s] jurisdiction to review that conclusion for legal error." *Id*. Here, the Appeals Council stated that it did *not* review the ALJ's decision and did *not* incorporate Plaintiff's additional evidence into the record. (R. 2.) Thus, contrary to the Commissioner's argument, "we retain jurisdiction to review [the Appeals Council's] conclusion for legal error." *Stepp*, 795 F.3d at 722.

#### 2. New and Material Evidence

Plaintiff argues that the Appeals Council should have considered the evidence she submitted because it was new and material, as it "confirm[s] a diagnosis prior to the date of the decision, one which had been anticipated earlier": that Plaintiff suffered from Paget's disease.

8

(Pl.'s Mem. at 14-15.) Additional evidence submitted to the Appeals Council will be evaluated only if it is "new and material" and "relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970(b). Here, the Appeals Council found the additional evidence pre-dating the ALJ's opinion did "not show a reasonable probability that it would change the outcome," and the evidence post-dating the ALJ's opinion did "not relate to the period at issue," which asked whether Plaintiff was disabled beginning on or before October 16, 2017. (R. 2.)

In *Farrell v. Astrue*, 692 F.3d 767 (7th Cir. 2012), which Plaintiff cites in support of her argument, the Seventh Circuit reversed and remanded the Appeals Council's determination that the claimant's evidence was not "new and material" because the new evidence confirmed a diagnosis of fibromyalgia, and "the ALJ's decision unequivocally rest[ed] in part on the determination that 'there is no evidence that [a fibromyalgia] diagnosis has been confirmed.'" *Id*. at 771. Here, by contrast, the ALJ's decision did not rest on the absence of a confirmed diagnosis of Paget's disease. As Plaintiff points out, the ALJ found that Plaintiff's severe spinal disorder was not disabling because she "received minimal conservative treatment" and her physical examinations were "normal," showing Plaintiff did not have functional limitations from her spine-related pain and other symptoms. (Pl.'s Mem. at 15.) While Plaintiff's additional evidence may confirm that her earlier spine issues were due to Paget's disease, it does not show Plaintiff was more limited prior to the ALJ's opinion than the record showed.[6] Accordingly, the Court finds that the Appeals Council did not err in finding Plaintiff's additional evidence was not new and material.

---

[6] In fact, the nature of Paget's disease suggests otherwise. "In most cases, Paget's disease of bone progresses slowly." https://www.mayoclinic.org/diseases-conditions/pagets-disease-of-bone/symptoms-causes/syc-20350811. *See also* https://www.hopkinsmedicine.org/health/conditions-and-diseases/paget-disease-of-the-bone (Paget disease "may be due to a slow viral infection of bone.")

9

### B. The ALJ's RFC Assessment

Plaintiff also argues that the ALJ's RFC assessment was incorrect because it was based on outdated state agency doctors' opinions and ignored evidence of some of Plaintiff's impairments. (Pl.'s Mem. at 5.) It is well-settled that the ALJ must "cite[] to relevant evidence adequate to support a conclusion" on a claimant's RFC. *Schloesser v. Berryhill*, 870 F.3d 712, 720 (7th Cir. 2017). An ALJ's RFC assessment will not be overturned where "[t]he ALJ thoroughly discussed the medical and other evidence and carefully considered each of [Plaintiff's] impairments and related functional deficits" before assigning an RFC. *Summers*, 864 F.3d at 527.

#### 1. The ALJ's Assessment of Plaintiff's Physical Limitations

The ALJ adopted the physical RFC opinions given by the state agency physicians on March 31, 2015, except she further limited Plaintiff to occasional pushing and pulling. Plaintiff argues that the ALJ's decision to adopt the conclusions of the state agency physicians was error because those opinions were "flawed": they were too old to account for medical reports written after Plaintiff's onset date indicating she had CTS and reduced back range of motion, and they only included environmental limitations to address her severe migraines. (Pl.'s Mem. at 6-8.)

With regard to her migraines, Plaintiff contends that the ALJ "did not dispute" the "uncontroverted evidence" that she has about three migraines per week that can last for hours and that she has sensitivity to light, "but did not explain why they would not impact her ability to maintain concentration and pace or force her away from her work station" or "why no limitation in exposure to bright light was warranted." (*Id*. at 6-7.) It is Plaintiff's responsibility to show the record supports "evidence-based restrictions that the ALJ could include in a revised RFC finding on remand." *Jozefyk*, 923 F.3d at 498. However, Plaintiff does not point to evidence that her migraines would impact her ability to maintain concentration and pace and limit her ability to

10

maintain a full-time job. Her "[m]ere conjecture or speculation" that migraines would cause more than environmental limitations does not warrant a remand. *Summers*, 864 F.3d at 527. *See also Green v. Saul*, 781 F. App'x 522, 527 (7th Cir. 2019) (rejecting challenge to RFC where neither the claimant nor the record specified how sleep problems impaired her ability to work beyond what was included in the RFC); *Saunders v. Saul*, 777 F. App'x 821, 825 (7th Cir. 2019) (upholding RFC where the claimant did not "suggest a better way to capture the idea behind limitations in concentration, persistence, and pace and apply those problems to job requirements").

In addition, in basing the RFC on the state agency medical reports, the ALJ explained that Plaintiff had "only received minimal conservative treatment" since then and "barely any" treatment after her alleged amended onset date. (R. 107.) "[A]n ALJ may take the lack of medical evidence into account, as the ALJ did here." *Capman v. Colvin*, 617 F. App'x 575, 580 (7th Cir. 2015). In addition, the ALJ properly considered that Plaintiff sought only conservative treatment, treating her impairments with medication and declining epidural injections. *See Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (upholding finding based in part on "relatively conservative" treatment). Contrary to Plaintiff's contention, the ALJ did not ignore evidence of Plaintiff's back issues; the ALJ recognized Plaintiff's had a severe back impairment but found that the impairment did not prevent Plaintiff from performing light work because she relied on muscle relaxants and avoided epidural injections. *See Green*, 781 F. App'x at 528-29 (affirming ALJ opinion where ALJ found the claimant's neck problem to be a serious impairment, but not serious enough to warrant additional limitations in the RFC).

The ALJ also noted that in the limited treatment notes in the record, Plaintiff's doctor recorded mostly normal physical examinations. ALJs properly consider when a claimant's examination results are within "normal" limits. *See L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146,

11

1152-53 (7th Cir. 2019) (upholding ALJ's opinion that relied in part on "normal" test results); *see also Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019) (same). Contrary to Plaintiff's claim, one doctor's report indicating decreased back range of motion in 2017 did not "rebut" the ALJ's conclusion that Plaintiff's examinations were mostly normal. (Pl.'s Mem. at 12-13.)

The ALJ also adequately accounted for Plaintiff's limitations from CTS in the RFC. Contrary to Plaintiff's argument (Pl.'s Mem. at 8), the state agency physicians and the ALJ considered this evidence and limited Plaintiff's RFC to frequent handling and fingering accordingly. The ALJ also limited her to occasional pushing and pulling. Plaintiff does not point to evidence that would support greater limitations arising from her CTS, and she does not suggest what additional limitations were needed to account for her CTS. Accordingly, the Court will uphold the ALJ's physical RFC determination.

### 2. The ALJ's Assessment of Plaintiff's Mental Limitations

Plaintiff also argues that the ALJ erred in concluding that Plaintiff's mental impairments were not severe and in declining to include any mental limitations in the RFC. (Pl.'s Mem. at 9-10.) Plaintiff contends that contrary to the ALJ's findings, her mental health treatment was not "minimal" and her mental health examination results were not "normal," because she has been taking mental health medication since October 2016, and in March 2017 she complained of mood swings and was prescribed Trileptal.[7] (*Id*. at 10-11.)

Contrary to Plaintiff's contentions, the ALJ adequately supported her decision not to include any mental health limitations in the RFC. As with the physical limitations, it is Plaintiff's responsibility to show the record supports "evidence-based restrictions that the ALJ could include

---

[7]Plaintiff also argues that the ALJ should have included limitations (which ones, she does not say) to account for her testimony that she had hallucinations, despite her failure to report them to her mental health treater. (Pl.'s Mem. at 11.) However, as the Court explains in the following section, the ALJ's decision to discount Plaintiff's testimony was not error.

12

in a revised RFC finding on remand," *Jozefyk*, 923 F.3d at 498, but Plaintiff points to none. The ALJ did not err in relying on "the absence of evidence" to determine that Plaintiff's mental health impairments were not severe. *Egly v. Berryhill*, 746 F. App'x 550, 554 (7th Cir. 2018). Plaintiff argues that her mental health treatment was more than "minimal" because she first saw Ms. Johnson and was prescribed medication "almost precisely a year prior to the ALJ's decision." (Pl.'s Mem. at 11.) However, the ALJ properly considered that treatment and determined that it was "minimal" and showed no functional limitations, and it is not this Court's job to reweigh evidence considered by the ALJ. We find that "[s]ubstantial evidence in the record—or more accurately, the lack of evidence for [Plaintiff's] claim—supports the judge's decision." *Roberts v. Berryhill*, 721 F. App'x 507, 508 (7th Cir. 2018).[8]

### C. The ALJ's Credibility Determination

Plaintiff also argues that the ALJ's credibility determination was erroneous because the ALJ did not adequately consider the treatment Plaintiff received for her impairments, and the ALJ erred in considering Plaintiff's work history. (Pl.'s Mem. at 12-13.) The Court agrees that the ALJ erred in considering Plaintiff's work history; however, the Court finds that error was harmless as the ALJ's credibility determination was otherwise supported by substantial evidence.

The Court "may disturb the ALJ's credibility finding only if it is 'patently wrong.'" *Burmester*, 920 F.3d at 510. An ALJ's credibility determination is not patently wrong if the ALJ

---

[8]That said, the Court agrees with Plaintiff that the ALJ went too far in assuming that Ms. Johnson's symptoms were "not of an organic nature" because they stemmed from her daughter's abusive relationship. (Pl.'s Mem. at 10.) However, this error was harmless because the Court is "convinced that the ALJ would reach the same result on remand" in light of the multiple other reasons the ALJ provided in finding that Plaintiff did not have a severe mental health impairment. *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018). *See also Richards v. Berryhill*, 743 F. App'x 26, 29 (7th Cir. 2018) (finding an error harmless where "the ALJ's single remark about the unlikely 'sudden[]' deterioration of her condition, though unnecessary, is not a major component of his credibility determination or overall reasoning.")

13

supported the determination with "specific reasons supported by the evidence." *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018). An ALJ may disregard a claimant's testimony where it conflicts with medical testing, contemporaneous reports made to physicians, and independent observations. *See Burmester*, 920 F.3d at 510-11; *see also Schloesser*, 870 F.3d at 721-22.

### 1. The ALJ's Consideration of Plaintiff's Treatment

Plaintiff contends that the ALJ erred in relying on "minimal" or conservative" treatment and "normal" examination findings to find Plaintiff's allegations not entirely credible. (Pl.'s Mem. at 12.) Plaintiff argues that the ALJ did not adequately consider that Plaintiff's "treatment for her physical impairments has included pain medications and muscle relaxers, migraine medications, physical and occupational therapy, wrist splints, and carpal tunnel release surgery." (*Id.*)

However, all but one of Plaintiff's citations in support of her argument post-date her alleged onset date of disability, namely, her February 2017 visit with Dr. Hatter-Stewart, in which Plaintiff complained of worsening headaches and progressive chronic back pain (*id.*), similar to her testimony at the hearing. And the ALJ considered Plaintiff's testimony and the treatment she received, including her February 2017 visit to Dr. Hatter-Stewart. Contrary to Plaintiff's arguments, the ALJ did not reject her allegations "solely on the basis that they were not supported by objective evidence." (Pl.'s Mem. at 12-13.) Such an action would indeed be erroneous. "But an ALJ may take the lack of medical evidence into account, as the ALJ did here." *Capman*, 617 F. App'x at 580.

Moreover, the ALJ properly supported her credibility determination with "specific reasons supported by the evidence," *Hall*, 906 F.3d at 644, specifically, Plaintiff's conservative and minimal treatment and medical evidence showing normal results. These are proper reasons upon

14

which an ALJ may find a Plaintiff's testimony less than credible.[9] *See*, *e.g.*, *Hinds v. Saul*, 799 Fed. App'x 396, 400 (7th Cir. 2020) (holding that the ALJ's decision was supported by substantial evidence where the ALJ expressly discounted the claimant's testimony based on factors including medical evidence showing normal physical examinations and the opinions of the state-agency physicians.)

### 2. The ALJ's Analysis of Plaintiff's Work History

As a final note, Plaintiff's argument that the ALJ misconstrued Plaintiff's work history is well taken. The Court agrees that the ALJ appeared to equate Plaintiff's brief, unsuccessful attempt to work part time in 2016 with an ability to work full time.[10] (Pl.'s Mem. at 14.) This, of course, would be error. However, this error was harmless because the Court is "convinced that the ALJ would reach the same result on remand" in light of the multiple other reasons, discussed above, that the ALJ provided in support of her determination that Plaintiff's allegations were not credible. *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018).

---

[9] Plaintiff also argues that the ALJ was prohibited from drawing negative inferences about her sparse treatment history because the ALJ did not ask questions about this at the hearing. (Pl.'s Mem. at 12.) This argument is a red herring. While it is true that an ALJ may not draw negative inferences about a claimant's lack of treatment before determining whether the reason for it was a lack of insurance or other issue that prevented her from seeking treatment, Plaintiff herself points out that the record "reflect[s] continuing care of [her] chronic physical and mental impairments," despite there being only five visits with treating sources after November 1, 2016. (*Id.*)

[10] That said, the Court does not agree with Plaintiff's implication that the record shows the same minimal work since 2012. (Pl.'s Mem. at 13-14.) The Court notes that Plaintiff's earnings report shows she earned $18,170.56 in 2012, $13,430.66 in 2013, $12,238.90 in 2014, $9,884.00 in 2015 and $9,613.17 in 2016. (R. 314.)

## **CONCLUSION**

For the foregoing reasons, the Court denies Plaintiff's motion to remand (D.E. 15) and grants the Commissioner's motion to affirm. (D.E. 34.)

**ENTER:**

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: May 20, 2020**

16